IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOSHUA DAVID RODDEN                                                              PLAINTIFF

vs.                                      Civil No. 6:16-cv-06103

NANCY A. BERRYHILL                                                               DEFENDANT
Acting Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Joshua David Rodden ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Act.

The Parties have consented to the jurisdiction of a Magistrate Judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

1.     **Background:**

Plaintiff protectively filed his disability application on April 7, 2014. (Tr. 10, 215-218). Plaintiff alleges being disabled due to post-traumatic stress disorder ("PTSD"), paranoid schizophrenia, paranoia, hallucinations, oppositional defiant disorder ("ODD"), and depression. (Tr. 121, 137, 155, 159, 226, 258, 276). Plaintiff alleges an onset date of February 19, 2013. (Tr. 10,

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "Tr."

215). This application was denied initially and again upon reconsideration. (Tr. 120-157, 159-160).

Thereafter, Plaintiff requested an administrative hearing on his denied application. The administrative law judge ("ALJ") granted that request and held an administrative hearing on July 16, 2015 in Hot Springs, Arkansas. (Tr. 35-119). At the hearing, Plaintiff was present and testified and was represented by Shannon Muse Caroll. *Id.* Plaintiff's wife, Shannon Rodden, also appeared and testified at the hearing. *Id.* Vocational Expert ("VE") Dianne G. Smith also testified at this hearing via telephone. *Id.*

At this hearing, Plaintiff testified he was thirty-three (33) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (DIB). (Tr. 40). As for his level of education, Plaintiff testified he completed the ninth grade. (Tr. 42, 65, 98).

After this hearing, on October 19, 2015, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (Tr. 10-22). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2014. (Tr. 10, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") during the period from his alleged onset date of February 19, 2013 through his date last insured of December 31, 2014, but he did work after the alleged onset date on a part-time basis. (Tr. 10, Finding 2). The ALJ determined Plaintiff had the following severe impairments: superior glenoid labrum lesion, status post right shoulder arthroscopy with labral debridement and biceps tenodesis, paranoid schizophrenia, depression, PTSD, and antisocial personality disorder. (Tr. 10, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 14-15, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 15-21, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except the claimant can work unskilled work or semiskilled work he has done in the past. The claimant can have contact with supervision and co-workers if superficial (meet/greet, ask for directions and instructions). The claimant can have limited contact or no contact with the public (e.g., no cashier work).

*Id.*

The ALJ then evaluated Plaintiff's Past Relevant Work ("PRW") and found Plaintiff is able to perform his PRW as a machine operator II (medium, semiskilled) or machine tender (light, unskilled). (Tr. 21, Finding 6). Because Plaintiff retained the capacity to perform this work, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, at any time from February 19, 2013, the alleged onset date, through December 31, 2014, the date last insured. (Tr. 21, Finding 7). The ALJ considered re-opening the prior application for DIB filed on April 4, 2013 and the prior application for supplemental security income ("SSI") filed on April 18, 2013, but he ultimately found no basis to do so. (Tr. 10).

Thereafter, Plaintiff requested a review by the Appeals Council. (Tr. 5-6). On September 20, 2016, the Appeals Council denied this request. (Tr. 1-4). On October 11, 2016, Plaintiff filed the present appeal with this Court. ECF No. 1. The Parties consented to the jurisdiction of this Court on October 11, 2016. ECF No. 5. Both parties have filed appeal briefs. ECF Nos. 13, 16. On January 10, 2018, Plaintiff filed a Motion to Remand for Supplemental Hearing to Consider

Additional Evidence ("Motion to Remand"). ECF No. 17. The Defendant objected to the Motion to Remand on January 23, 2018. ECF No. 20. On January 25, 2018, Plaintiff filed a reply to the Defendant's objection. ECF No. 22. The Motion to Remand was denied by the Court on January 30, 2018 because Plaintiff did not make a showing that any of the information submitted, including the mental assessment provided by Dr. Sean Kaley, M.D. on November 15, 2017, was "material" to the ALJ's disability determination. ECF No. 25. This case is now ripe for determination.

**2.     Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2010); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of

proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. § 404.1520 (2003).

3. **Discussion:**

In his appeal brief, Plaintiff claims the following: (A) the ALJ's Step Two determination was not supported by substantial evidence; (B) the ALJ's Step Three determination was not supported by substantial evidence; (C) the ALJ's RFC determination was not supported by substantial evidence; and (D) the ALJ erred by concluding Plaintiff could perform his PRW. ECF No. 13 at 1-21. The Court will consider each of these arguments.

A. **Severe Impairments**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cri. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet …it is also not a toothless standard.'" *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (quoting *Kirby v. Astrue*, 500 F.l3d 705, 708 (8th Cir. 2007).

Plaintiff argues the ALJ erred by finding the alleged left knee impairment was non-severe. ECF No. 13 at 5. Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by medical record. *Johnston v. Apfel,* 210 F.3d 870, 875 (8th Cir.2000). The ALJ addressed Plaintiff's past history of four knee surgeries in his decision. (Tr. 13). The Court concurs with the ALJ's finding that despite this history, the record did

6

not establish any functional limitation as a result, Plaintiff had a normal gait upon examination, and he was able to work after his most recent knee surgery. *Id*. Additionally, the medical evidence record failed to demonstrate Plaintiff sought treatment after the final surgery for his left knee. Plaintiff even admitted during the relevant time period to walking to community service on a regular basis. (Tr. 526-529).

The physical RFC assessments in the record align with the ALJ's non-severe finding. State agency medical consultant, Dr. Sharon Keith, M.D. conducted a physical RFC assessment on July 16, 2014, and assessed the medical evidence record supported a medium RFC with no overhead reaching for the right upper extremity. (Tr. 128-130). Dr. Keith acknowledged the left knee surgical history, but still found Plaintiff could stand and/or walk with normal breaks for a total of six hours in an eight-hour workday. *Id*. Subsequently, state agency medical consultants, Drs. Bill F. Payne, M.D. and Dr. Kumar Swami, M.D., agreed with this assessment. (Tr. 146-148, 493-494).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's determination of history of left knee surgeries as non-severe.

### B. Listing of Impairments

The burden of proof is on the Plaintiff to establish that his impairments meet or equal a listing. *See Sullivan v. Zebley,* 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). To meet a listing, an impairment must meet all of the listing's specified criteria. *Id.* at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 404.1526(b); *Sullivan,* 493 U.S. at 531 ("a claimant ...

must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment").

Plaintiff argues that the ALJ erred by failing to determine that Plaintiff's mental impairments met Listings 12.03, 12.04, 12.05, 12.06, and 12.08. ECF No. 13 at 5-16. Plaintiff does not specifically address how he met the criteria in each listing, but rather contends that he had marked limitations in activities of daily living and severe limitations in social functioning and concentration, persistence, and pace; and the combination of the limitations in these functional areas rendered him disabled. *Id*. The ALJ stated that at Step Three, he considered 12.03 for paranoid schizophrenia; 12.04 for depression; 12.06 for PTSD; and 12.08 for antisocial personality disorder. (Tr. 14). The ALJ determined that Plaintiff had mild restriction in activities of daily living; moderate difficulties in social functioning and concentration, persistence, or pace; and no episodes of decompensation. (Tr. 14-15).

State agency medical consultant, Dr. Abesie Kelly, Ph.D. provided a Psychiatric Review Technique ("PRT") that concurred with the ALJ's findings. (Tr. 127). Dr. Kelly found Plaintiff's activities of daily living restrictions were mild; difficulties in maintaining social functioning were moderate; difficulties in maintaining concentration, persistence, or pace were moderate; and he had no repeated episodes of decompensation, each of extended duration. *Id*. Subsequently, state agency medical consultants, Drs. Jerry R. Henderson, Ph.D. and Dr. Maurice Prout, Ph.D., agreed with this assessment. (Tr. 144-145, 495-498).

In regards to activities of daily living, Plaintiff testified he helps his wife cook, does yard work with his son, and can wash dishes with breaks. (Tr. 86-91). Plaintiff indicated to Dr. Dawn C. Parsons, Psy.D., a mental consultative examiner, that he required no assistance with activities of

8

daily living, and he was capable of shopping, managing his own finances, and driving even though he does not have a driver's license. (Tr. 316). In regards to social functioning, Plaintiff testified his relationship with his wife was once tumultuous with fighting, but now they get along great. (Tr. 68-69). He also testified he gets into arguments with others approximately once a week, and has gotten fired from jobs for not getting along. *Id*. Dr. Parsons assessed Plaintiff had the capacity to communicate his needs effectively, but he appeared to have difficulty in conducting interpersonal relations. (Tr. 316). However, mental health treatment records revealed medication and individual therapy improved Plaintiff's social functioning. (Tr. 479-480, 483-484, 522-525, 547-548).

In regards to concentration, persistence, or pace, Plaintiff testified he was able to watch television and his Function Report revealed he played video games. (Tr. 86-91, 242). Ms. Debra Martinez, L.C.S.W., Plaintiff's therapist at Community Counseling Services, Inc. ("CCS"), found that Plaintiff had poor comprehension and concentration, but ultimately gave him a moderate status as opposed to severe. (Tr. 322). During the mental consultative examination, Plaintiff was able to recall six digits forwards, four backwards, 3/3 objects after five minute delay, and he was unable to perform serial 3s, but could count backwards from 20. (Tr. 314-315). Dr. Parsons found Plaintiff displayed limited difficulty in completing tasks during the interview and displayed no evidence of impairment in remaining goal-directed. (Tr. 316). Dr. Parsons also found Plaintiff adequately attended to tasks presented in the mental status examination in an acceptable amount of time. *Id.*

In regards to episodes of decompensation, although Plaintiff received inpatient treatment during the relevant time period for suicidal and homicidal ideation, none of the episodes lasted longer than two weeks. (Tr. 389-397, 410-413).

9

Although the ALJ did not namely consider Listing 12.05 for intellectual disorder in his decision, the record does not support that the listing was met as Plaintiff alleged. *See Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("there is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record."). Dr. Parsons found it did not appear Plaintiff was functioning within or near the mentally retarded range based on the current findings, educational history, nature of prior work, and general level of adaptive functioning. (Tr. 315). Dr. Parsons also assessed Plaintiff was able to attend to the cognitive demands of the clinical interview and history during the evaluation with no significant difficulty. (Tr. 316).

Although Dr. Terrell Bishop, M.D., Plaintiff's treating psychiatrist at CCS, diagnosed him with "borderline intellectual functioning, phase of life, or spiritual problem," the Court finds Plaintiff did not display significant deficits in adaptive functioning manifested by dependence upon others for personal needs to meet Listing 120.5(A), and he failed to meet Listing 12.05(B) because he did not have extreme limitation of one or marked limitation of two areas of mental functioning. (Tr. 338-342). Additionally, Plaintiff's reading level was found to be satisfactory by Ms. Martinez at CCS, and he testified that he completed the ninth grade, was once certified as a mechanic, and was a certified (computer numeric controlled ("CNC") operator. (Tr. 42, 44-45, 60-61, 65, 98, 323).

Based on the foregoing, the Court agrees with the ALJ's determination that Plaintiff's impairments did not meet or medically equal a mental listing.

**C.    RFC Determination**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id.* This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart,* 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id.* In determining that Plaintiff maintained the RFC to perform medium, unskilled or semiskilled work that entailed only superficial contact with supervisors and co-workers and limited to no contact with the public, the ALJ considered Plaintiff's subjective complaints; his medical records; and the provided medical opinions. (Tr. 15-16). The Court finds substantial evidence supports the ALJ's RFC determination.

        a.     **Mental RFC**

Plaintiff contends the RFC determination was not supported by substantial evidence because the ALJ favored the assessment provided by Dr. Parsons, a mental consultative examiner, in formulating the mental RFC instead of mental health treatment records. ECF No. 13 at 16. The ALJ considered the entirety of the record, not just Dr. Parsons's assessment, and the evidence supports the ALJ's mental RFC.

On July 23, 2013, Dr. Parsons administered a mental consultative examination, and noted that Plaintiff did not appear to be responding to any internal processes, but he endorsed current auditory and visual hallucinations. (Tr. 312-317). Dr. Parsons found Plaintiff reported an unusual amount of symptoms including severe depression, PTSD, suicidal and homicidal ideation, command auditory hallucinations, paranoid ideation, and visual hallucinations. (Tr. 315). Dr. Parsons noted that although Plaintiff reported hallucinations and paranoia "all the time," he did not respond to any of these in the session, and Dr. Parsons opined that it was unlikely that he was experiencing the amount and severity of the symptoms he endorsed because it would be unlikely he could function. *Id.* Plaintiff also denied any history of hallucinations or delusions during a March 2013 inpatient hospital visit. (Tr. 316, 410-413). Dr. Parsons exhibited concern about over-reporting or over-exaggerating at best and malingering at worst. (Tr. 316).

Dr. Parsons found Plaintiff met the diagnostic criteria for antisocial personality disorder due to his failure to conform to social norms, impulsivity, failure to plan ahead, aggressive behavior, irresponsibility, deceitfulness, reckless disregard for the safety of others, and lack of remorse for his victims. *Id.* Dr. Parsons found Plaintiff indicated he was able to drive, required no assistance with activities of daily living, was able to shop for himself, and could manage his own finances. (Tr. 316). Dr. Parsons assessed Plaintiff had the capacity to communicate his needs effectively, but he appeared to have difficulty in conducting interpersonal relations. *Id.* Plaintiff was able to attend to the demands of the clinical interview and history during his evaluation with no significant difficulty. *Id.* He was also able to respond to the demands of the interview process, and remained on topic during discussion. *Id.* Plaintiff displayed limited difficulty in completing tasks during the interview, and displayed no evidence of impairment in remaining goal-directed. *Id.* Plaintiff adequately

attended to tasks presented in the mental status examination in an acceptable amount of time. *Id.* He was able to manage funds without assistance. *Id.* Although Dr. Parsons detected evidence that Plaintiff was malingering, the results of the evaluation were considered by Dr. Parsons to be a valid representation of his functioning on the day of testing. *Id.* The Court finds the ALJ permissibly relied upon Dr. Parsons's findings in determining Plaintiff's mental RFC restrictions. In addition, three state agency medical consultants considered Dr. Parsons's assessment and found that Plaintiff could perform unskilled work. (Tr. 131-133, 148-151, 495-498).

The mental health treatment records, primarily provided by CCS, support Dr. Parsons's assessment. After a brief hospitalization, Plaintiff began outpatient treatment at CCS for medication management with Dr. Bishop and individual therapy with Ms. Martinez. Plaintiff was diagnosed with schizophrenia, paranoid type; and antisocial personality disorder and borderline intellectual functioning, phase of life, or spiritual problem. (Tr. 320-325, 338-342). Dr. Bishop ascertained that Plaintiff needed medication and had no side effects. (Tr. 326-329, 338-342).

On May 1, 2014, Dr. Bishop offered inpatient treatment due to increased symptoms, but Plaintiff declined stating he was under control and not a danger to himself or others. (Tr. 330-333). The subsequent CCS visits revealed Plaintiff's symptoms improved with medication compliance. (Tr. 334-337, 343-346, 479-484, 522-525, 547-548). Dr. Bishop found Plaintiff had dramatically improved. (Tr. 334). Plaintiff reported that his employer and other people had noticed he was doing very well on Thorazine. (Tr. 522). As of November 13, 2014, Plaintiff's psychotic symptoms were not troubling him, and he was not suicidal or homicidal. (Tr. 530). During the final CCS visit within the relevant time period, Ms. Martinez discussed a tentative discharge date with

discontinuation of therapy possibly set for Spring 2015. (Tr. 547-548). Undoubtedly, Plaintiff has mental impairments that require medication and treatment, but the evidence from Plaintiff's treating mental health providers and Dr. Parsons's assessment concur with the ALJ's mental RFC finding. Additionally, the ALJ assigned significant weight to the assessments of three state agency medical consultants that found Plaintiff capable of unskilled work. (Tr. 19, 131-133, 148-151, 495-498). The Court agrees with the ALJ's determination that their opinions were mostly consistent with the medical evidence record except the record indicated Plaintiff could also perform semiskilled work because his concentration was often normal. (Tr. 19).

Plaintiff also contends the ALJ failed to properly consider Plaintiff's learning disability and global assessment of functioning ("GAF") scores between 20 and 36. ECF No. 13 at 16-18. Plaintiff did not provide a substantive argument regarding the learning disability issue, and, in fact, Plaintiff was not diagnosed with a learning disability during the relevant time period. Furthermore, the ALJ's decision to give little weight to Plaintiff's GAF scores in the record is supported by substantial evidence because "GAF scores have no direct correlation to the severity standard used by the Commissioner." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (citing 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000)). As a result, GAF scores are not given the same consideration as in the past. "[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010). The Court finds other evidence in support of the ALJ's mental RFC determination is more significant than the Plaintiff's GAF scores.

Plaintiff contends the ALJ improperly discredited Plaintiff's subjective complaints by accusing him of using drugs. ECF No. 13 at 19. Plaintiff argues further that except for an admission on May 5, 2010, there was no other indication of drug use. *Id*. However, Dr. Parsons observed the Plaintiff tested positive for marijuana and benzodiazepines during a March 2013 inpatient visit even after denying any use to the hospital staff. (Tr. 313, 315, 410-416). On September 29, 2013, Plaintiff also admitted that he smoked a marijuana joint two days prior. (Tr. 393). Nevertheless, Plaintiff's drug use was not a primary discrediting factor in the ALJ's decision.

In his decision, the ALJ determined Plaintiff's few brief episodes of symptom exacerbation were because of non-compliance with medication. (Tr. 18). Plaintiff argues the episodes included suicidal ideation, homicidal ideation and suicide attempts, and the ALJ erroneously relied upon short stints when he showed some improvement to formulate the mental RFC. ECF No. 13 at 14-15. The Court finds the records support that the exacerbation of Plaintiff's mental symptoms were contemporaneous with his failure to follow prescribed treatment. The ALJ found Plaintiff's mental impairments were controlled on Thorazine. (Tr. 20-21); *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("if an impairment can be controlled by treatment or medication, it cannot be considered disabling"). Nevertheless, the ALJ did not conclude that Plaintiff's medication noncompliance and occasional drug use independently precluded a finding of disability. Plaintiff admitted in the record that he could perform his past relevant work. (Tr. 18, 20, 97-98). The ALJ found Plaintiff appeared capable of following directions consistent with a level of unskilled or semiskilled work because his concentration ranged from normal to distractible. (Tr. 18). The ALJ also acknowledged Plaintiff's limitations by restricting him to limited or no contact with the public and superficial contact with supervisors and coworkers. *Id*.

Based on the foregoing, the Court finds there is substantial evidence to support the ALJ's mental RFC determination.

### b. Physical RFC

The ALJ determined Plaintiff's shoulder impairment restricts him to a range of medium work. (Tr. 17). Plaintiff argues his right shoulder impairment alone prohibits the performance of medium work. ECF No. 13 at 3-5. The medical evidence showed that Plaintiff reportedly injured his shoulder while lifting a heavy object at work when he felt his shoulder pop, and he had ongoing pain for four years. (Tr. 360-362b 444). After interpreting an MRI study and arthrogram of the right shoulder, Dr. Brandon Michael Byrd, M.D., an orthopedic surgeon, diagnosed Plaintiff with a grade II superior labrum anterior and posterior ("SLAP") tear. (Tr. 355, 362). On April 3, 2014, Dr. Byrd performed a right shoulder arthroscopy with labral debridement and open biceps tenodesis. (Tr. 363-365). During a post-operative visit three months after surgery, Plaintiff reported he was very happy with the results and had minimal pain. (Tr. 424-425). Upon examination, Plaintiff had full range of motion in the shoulder with full strength all without pain. (Tr. 425). Plaintiff had some occasional soreness with increased activities, but overall he was doing well. *Id*. Dr. Byrd assessed Plaintiff was able to do activities as tolerated, and he was fully released back to work. *Id.*

Shortly thereafter on July 16, 2014, state agency medical consultant, Dr. Keith conducted a physical RFC and found the evidence supported a medium RFC with no overhead reaching for the right upper extremity. (Tr. 128-130). State agency medical consultants, Drs. Payne and Swami, agreed with this assessment. (Tr. 146-148, 493-494). A year later, although Plaintiff testified his biggest problem was with his right shoulder, he admitted he was not currently taking pain medication. (Tr. 79-81, 103).

The ALJ found Plaintiff's shoulder impairment affected his ability to lift and carry heavy weight, and therefore a medium RFC was warranted. (Tr. 17). Although the ALJ assigned significant weight to the state agency consultants' opinions, he determined the opinions were inconsistent with some treatment notes indicating Plaintiff's right shoulder had a full range of motion and minimal reported pain. (Tr. 17-19). Such evidence provided no basis for a restriction in pulling or overhead reaching. *Id.*

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's physical RFC determination.

### D. Past Relevant Work

Plaintiff contends the ALJ erred in determining he could perform his past relevant work due to his mental inability to work in close proximity to coworkers and supervisors. ECF No. 13 at 19-20. After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's mental impairments did not preclude him from performing his past relevant work as a machine operator II or machine tender during the relevant time period. (Tr. 21, 109-110); *See Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**4.	Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 13th day of March 2018.**

>	/s/   Barry A. Bryant
>	HON. BARRY A. BRYANT
>	U.S. MAGISTRATE JUDGE